UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------------
In re
       LEGACY HEALTH CARE, LLC                Case No. 05-11270 K

                          Debtor          Jointly Administered with Case
                                          Nos.:   1-05-11310 K
                                                   1-05-11352 K
                                                   1-05-11357 K

------------------------------------------------------------------
and
------------------------------------------------------------------
In re

       WILLIAM H. ZACHER

                          Debtor          Case No. 05-11147 K
------------------------------------------------------------------


OPINION AND ORDER


      The reorganized Debtor here operates nursing homes. One of the nursing homes

operates on land that is leased from a non-insider. The lease contains a "prevailing party"

provision.[1] Under this provision, the landlord is seeking $101,000 in attorneys fees and costs

incurred since the filing of the petition and incident to the Debtor's reorganization efforts. The

reorganized Debtor argues that that provision has no application to the various legal proceedings

that occurred in this Court under 11 U.S.C. § 365; but in the alternative, the reorganized Debtor

---

[1] The provision states: "17. <u>WAIVER</u>. A waiver by the Lessor or by the Lessee of any default by the other in the observance and performance of any of the conditions or covenants hereof shall not constitute or be deemed a waiver of any subsequent or other default. The exercise of any right or remedy shall not impair the right to any other remedy. If the Lessor or the Lessee employs an attorney to <u>enforce or maintain through suit or otherwise any right or remedy under this lease, the Lessor or the Lessee, as the case may be</u>, shall be liable to the other for such reasonable attorneys' fees and expenses as may be incurred by the other in connection herewith, provided such party prevails in such litigation, then and in such event the plaintiff shall be liable to the defendant for such reasonable attorneys' fees and expenses as may be incurred in connection herewith."

argues that if that provision does apply to the various § 365 disputes, then it is the Debtor who

has "prevailed" and should be entitled to $38,000 in attorneys fees and costs.

Therefore, the interesting questions presented in this case are: (1) whether a

landlord's vigorous assertion, in Bankruptcy Court, of the full panoply of 11 U.S.C. § 365 rights

as to a lease that was in default at the time of the filing of the Petition, is "litigation" for purposes

of such a lease provision; (2) if it is such "litigation," then which party has "prevailed" when the

Court has found the cure proposal to be reasonable and has approved assumption and assignment

upon terms that ultimately were agreed upon between the debtor and the landlord;[2] and (3) if

such a lease provision has no applicability to "litigation" under 11 U.S.C. § 365, then is either

side entitled to any attorneys fees and costs at all.

Taking the last question first, we find that the matter has been ably addressed by

the Bankruptcy Court for the Southern District of New York in the case of *In re Best Prod. Co.,*

*Inc.*, 148 B.R. 413, 414 (Bankr. S.D.N.Y. 1992).  That case found that, when an action is taken

under § 365(b), "entitlement" to attorneys' fees is determined under the provisions of the lease

contract; the Code does not provide an independent basis for seeking reimbursement.  *Id.* at 414

(collecting cases).

Moving now to the other two questions at Bar, it is appropriate to consult a law

dictionary.  Black's Law Dictionary 7th Edition (1999) defines "litigation" as "the process of

carrying on a lawsuit" or "a lawsuit itself."  For the definition of "lawsuit," Black's refers the

---

[2]It is important to note that although the material terms of cure were ultimately agreed upon, there was an explicit reservation of rights to argue the question of attorneys fees; therefore, there was no "novation" or other form of "waiver" of the right to attorneys fees pursuant to the lease.

reader to "suit," which word is defined as "any proceeding by a party or parties against another in a court of law." This Court has no hesitancy in finding that the mere fact that the Federal Rules of Bankruptcy Procedure do not require a Summons and Complaint as to requests to lift stay, requests to fix a time to assume or reject executory contracts, requests to assume and assign an executory contract, etc., does not mean that such "contested matters" are not "litigation." They are "litigation," and this Court so finds.[3] Perhaps more importantly, the lease in question specifically makes reference to "Bankruptcy and other litigation" [emphasis added] in a provision that has no use here because its provisions are"*ipso facto*" provisions that fail under § 365(b)(2)(A).

More difficult is the question of whether such litigation is for the purpose of "enforcing the lease" as that term is used in the "prevailing party" provision set forth at footnote 1 above. This Court certainly has seen many Chapter 11 cases in which the landlord, though vigorous in its participation in a debtor's reorganization efforts, is not endeavoring to enforce the pre-petition lease; rather, some landlords do not relish the prospect of a vacant property and endeavor, from the outset, to negotiate a new lease with the DIP.

---

[3]Compare, however, *Melissa Jacoby,* Fast, Cheap and Credit-Controlled: Is Corporate Reorganization Failing? 54 Buf. L.Rev. 401, 428 (2006): "A bankruptcy case, especially a large Chapter 11, is not now, and never was, a typical case in the federal judicial system. Chapter 11 and its predecessors always have straddled the worlds of judicial processes, administrative processes, and negotiated business deals to some extent. In enacting Chapter 11 in 1978, Congress limited judges' active oversight of cases and thus set Chapter 11 down the path to an even less judicially-oriented process."

This Court, however, submits that the 1978 Reform Act made the Chapter 11 process more "judicially-oriented," not less, because the Bankruptcy Court now functions exclusively as a "court of law."

Case No.05-11270K, 05-11310K,                                                    Page 4
05-11352K, 05-11357K, 05-11147K

This is not the case here, however.  Prior to the filing of the Petition here, the landlord had been receiving rents on a regular basis since 1977, and, consequently, had not looked deeply into whether there might be non-rent or non-monetary defaults by the Debtor. Once the Petition was filed, the landlord did look deeply into the Debtor's financial affairs, and found gross and major lease defalcations.  In the landlord's initial appearance here, it sought denial of the Debtor's Motion to Assume the lease, and sought lift of stay to seek to install a Receiver, reciting that the lease defaults included failure to pay $800,000 in real property taxes; an impermissible sublease of the premises to an insider entity that was not in privity with the landlord; an impermissible consolidation of the Health Department operating certificate for the home with the certificate of another property; and numerous failures to maintain the property in good repair, some of which may have jeopardized the safety of residents or others.

From those beginning papers, in April of 2005, through the eventual Confirmation June 6, 2006, the landlord vigorously pursued <u>compliance</u> with the pre-petition lease, or, in the alternative, eviction.

The Court finds that there did occur here "litigation" by the landlord to "enforce the lease."

The final question is "Who 'prevailed'?"  Because the provision in question is a "prevailing party" provision and not an "all costs of enforcement" provision, this is an essential question.

The Court finds that this question is easily answered by ascertaining whether 11

U.S.C. § 365 is invoked by a <u>debtor</u> to "<u>enforce or maintain . . . any right of remedy under [the]</u>

<u>lease</u>," or is instead invoked to assert rights or remedies contained in § 365 that are in <u>derogation</u>

of the terms of the lease.

Certainly, a debtor might need to invoke 11 U.S.C. § 365 to enforce a lease.

Since passage of the Chandler Act in 1938, the mere filing of a petition for bankruptcy relief has

not constituted an "anticipatory breach" excusing the other party from performance.[4]  The DIP or

Trustee has an opportunity to a "assume" the lease and enforce it over the other party's

objection.  And over the years, the result of such cases as *In re Matter of Queens Boulevard*

*Wine & Liquor Corp. v. Blum,* 503 F.2d 202, 205 (2d Cir. 1974) has been codified to provide a

debtor with powers of "cure" that extend beyond the terms of a typical lease, as to pre-petition

defaults.  E.g., *In re Westview 74th St. Drug Corp.*, 59 B.R. 747, 754 (Bankr. S.D.N.Y. 1986).

Though a tautology, it is found by the court that if § 365 is invoked to hold the

landlord to the lease terms despite the Chapter 11 filing, then § 365 is invoked by a <u>debtor</u> to

"enforce the lease."[5]  It is when a debtor seeks to use the powers provided <u>by the statute</u>, rather

than its powers <u>under the lease</u>, that a debtor's invocation of § 365 is in derogation of the lease.

Here the Debtor's choice was to employ the "cure and assure" provisions unique to § 365.

Consequently, the Debtor cannot have "prevailed" in any efforts to "enforce" the lease, for

---

[4]See *Bohack Corporation v. Truck Drivers' Local Union No. 807*, 431 F.Supp. 646 (E.D.N.Y. 1977), *aff'd* 567 F.2d 237 (2d Cir. 1977), *cert. denied*, 439 U.S. 825, 99 S. Ct. 95, 58 L.Ed. 2d 117 (1978).

[5]The nullification of "*ipso facto*" clauses in the lease does not belie this formulation because such clauses fall by enactment of Congress, not by a debtor's choices within the reorganization effort, after the filing of the petition.  The policy reasons for such laws are not a court's proper concern.

purposes of the lease provision in question

Finally, then, did the landlord "prevail"?  In this case it undoubtedly did, even

though the details of "cure and assure" were ultimately settled.  There is no new lease.  Rather,

there is an agreed "term sheet," incorporated into the Plan that this Court confirmed, which

provides that the reorganized Debtor will bring itself into compliance with the leases in the

following manner.  The term sheet required; an escrow of real property taxes; repairs to the

property as enumerated in a quarter-by-quarter schedule; the tenant to forward any reports issued

by and all reports filed by the tenant with the NYSDoH; a right of first refusal to purchase in

favor of the landlord; that landlord's attorneys file a fee application here to obtain

reimbursement; maintenance of insurance at existing levels; and that any confirmation order

require all property taxes to be paid and current, among other things.

### CONCLUSION

The reorganized Debtor's efforts were in derogation of the lease, but the § 365

process was successful in that the Debtor is still in possession under the lease and the Term

Sheet.  Under the *Best Products* case, the Debtor is entitled to no costs or expenses as against the

landlord for having succeeded in reaching "peace" under § 365.

The landlord, on the other hand, has succeeded in "litigation" to "enforce" the

lease; and is entitled to reasonable attorney's fees and costs under § 17 of the lease.

This matter is restored to the calendar for a telephone conference to schedule

proceedings regarding the reasonableness of the landlord's request - $101,000.  Counsel are to

consult and arrange the conference call.

        SO ORDERED.

Dated:        Buffalo, New York
               September 22, 2006


                                     _____
                                          U.S.B.J.